1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   ANTHONY JORDAN TENNESSEE, Jr.,          Case No.:  25cv2026-LL-JLB
     CDCR #BC-4511,
12
                                Plaintiff,   **ORDER GRANTING MOTION TO**
13                                           **PROCEED IN FORMA PAUPERIS**
     v.                                      **AND DIRECTING U.S. MARSHAL**
14                                           **TO EFFECT SERVICE OF**
     A. ENRIQUEZ, Correctional Officer;      **SUMMONS AND COMPLAINT**
15   J. SANCHEZ, Correctional Officer;        **UPON THE NAMED**
     C. FLORES, Correctional Officer;        **DEFENDANTS UNDER 28 U.S.C.**
16   A. QUINTANA, Correctional Officer;      **§ 1915(d) AND Fed. R. Civ. P. 4(c)(3)**
     C. PRIETO, Correctional Sergeant;
17   JOHN DOE, Correctional Lieutenant;
                                             **[ECF No. 2]**
18
                               Defendants.
19

20

21

22        Plaintiff Anthony Jordan Tennessee, Jr., acting pro se and currently incarcerated at

23   California State Prison, Sacramento ("CSP-SAC") in Represa, California, has filed a civil

24   rights Complaint pursuant to 42 U.S.C. § 1983, together with a Motion to Proceed In Forma

25   Pauperis pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 1 ("Compl."); ECF No. 2 ("IFP").

26   Plaintiff claims several prison officials at Richard J. Donovan Correctional Facility in San

27   Diego ("RJD") used excessive force, failed to protect him, and refused to provide medical

28   care for injuries sustained during a cell extraction while he was incarcerated there on

1    November 22, 2023.[1] *See* Compl. at 4–6. He seeks $250,000 in general and punitive

2    damages and demands a jury trial. *Id.* at 10.

3        For the reasons below, the Court **GRANTS** Plaintiff's Motion to Proceed IFP,

4    screens his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), finds it alleges

5    plausible Eighth Amendment excessive claims for relief and **DIRECTS** the U.S. Marshal

6    to effect service of process upon the named Defendants pursuant to 28 U.S.C. § 1915(d)

7    and Fed. R. Civ. P. 4(c)(3) on Plaintiff's behalf.

8    **I.    MOTION TO PROCEED IFP**

9        Parties instituting most civil actions in federal court must pay a filing fee of $405.

10   *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee

11   Schedule, § 14 (eff. Dec. 1, 2023). The action may proceed despite a failure to pay the

12   entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP

13   pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir.

14   2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here

15   [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until

16   the fee[s] [a]re paid.").

17       "While the previous version of the IFP statute granted courts the authority to waive

18   fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act]

19   amended the IFP statute to include a carve-out for prisoners: under the current version of

20   the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the

21   prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767

22

23   ——————————————

24   [1] The Court judicially notices that Plaintiff filed another civil rights action on the same day
     in *Tennessee v. Camacho, et al.*, S.D. Cal. Case No. 25-cv-2027-DMS-KSC (ECF No. 1)

25   (filed August 8, 2025) ("*Camacho*"); *see United States v. Wilson*, 631 F.2d 118, 119
     (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases.").

26   However, in *Camacho*, Plaintiff seeks to sue different RJD correctional officials who are

27   alleged to have used excessive force against him a month prior to the cell extraction at issue

28   here. *See Camacho*, ECF No. 1, at 1–3. He does not claim that the two incidents are related.

1   (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for
2   collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

3          To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of
4   all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account
5   statement (or institutional equivalent) for . . . the 6-month period immediately preceding
6   the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113,
7   1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when
8   funds exist, collect, … an initial partial filing fee," which is "calculated based on 'the
9   average monthly deposits to the prisoner's account' or 'the average monthly balance in the
10  prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly
11  payments of 20 percent of the preceding month's income credited to the prisoner's
12  account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while
13  prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one
14  lump sum, they nevertheless remain obligated to pay the full amount due in monthly
15  payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2);
16  *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

17         Here, Plaintiff's Motion to Proceed IFP complies with both 28 U.S.C. § 1915(a)(1)
18  and (2). In support, Plaintiff has submitted a prison certificate authorized by a CSP-SAC
19  accounting officer and certified copies of his California Department of Corrections and
20  Rehabilitation ("CDCR") Inmate Trust Account Statement Report. *See* ECF No. 2 at 5–7;
21  *see also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff
22  maintained an average monthly balance of $9.75 in his prison trust account, and had $5.00
23  in average monthly deposits credited to his account over the 6-month period immediately
24  preceding the filing of his Complaint. At the time of filing, however, Plaintiff's available
25  balance was only $0.18. *See* ECF No. 2 at 5, 7.

26         Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2)
27  and assesses an initial partial filing fee of $1.95 pursuant to 28 U.S.C. § 1915(b)(1). This
28  initial fee need be collected, however, only if sufficient funds are available in Plaintiff's

1  account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall

2  a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal

3  judgment for the reason that the prisoner has no assets and no means by which to pay the

4  initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts

5  as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure

6  to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR

7  must thereafter collect the full balance of the $350 total fee owed in this case and forward

8  payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

9  **II.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(a)**

10      A.   Standard of Review

11      Because Plaintiff is a prisoner and proceeding IFP, his Complaint requires an initial

12  screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Under these statutes, the

13  Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is

14  frivolous, malicious, fails to state a claim, or seeks damages from defendants who are

15  immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C.

16  § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc));

17  *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C.

18  § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or

19  malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d

20  903, 920 n.1 (9th Cir. 2014) (citation omitted).

21      "The standard for determining whether a plaintiff has failed to state a claim upon

22  which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

23  Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d

24  1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.

25  2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

26  applied in the context of failure to state a claim under Federal Rule of Civil Procedure

27  12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to

28  "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

4

25cv2026-LL-JLB

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court "ha[s] an obligation where the petitioner is pro se, particularly in a civil rights case, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). It may not, however, "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B.    Discussion**

The Court has reviewed Plaintiff's Complaint and finds it contains Eighth Amendment allegations sufficient to survive the "low threshold" set for *sua sponte* screening. *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123.

To the extent Plaintiff also seeks to pursue substantive "14th Amendment due process" claims against the same Defendants based on the same factual allegations proffered in support of his excessive force, failure to intervene, and medical care claims, *see* Compl. at 4, the Court **DISMISSES** his Fourteenth Amendment claims *sua sponte* as redundant because it is the Eighth Amendment's prohibition of cruel and unusual punishments that governs. *See* 28 U.S.C. §§ 1915(e)(2)(b)(2); 1915A(b)(1). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quotation omitted). "Any protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1986). Plaintiff's failure to protect and inadequate medical attention claims also fall squarely under the protections of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's

5

1  'deliberate indifference' to a substantial risk of serious harm to an inmate violates the

2  Eighth Amendment.") (citations omitted); *Estelle v. Gamble*; 429 U.S. 97, 104 (1976)

3  ("Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary

4  and wanton infliction of pain,'[] proscribed by the Eighth Amendment.") (internal citation

5  omitted); *see also Easter v. CDC*, 694 F. Supp. 2d 1177, 1187 (S.D. Cal. 2010) ("Because

6  the Eighth Amendment provides an explicit source of protection from the type of conduct

7  Plaintiff alleges, his claim is preempted by the Eighth Amendment and should not be

8  analyzed as a substantive due process claim under the Fourteenth Amendment.").

9          1.      *Factual Allegations*

10          Specifically, Plaintiff claims RJD Officers Flores, Enriquez, Sanchez, Quintana, and

11  Prieto, together with Lt. John Doe, all either used unnecessary and excessive force against

12  him while performing a cell extraction, failed to intervene while others used unnecessary

13  force, and refused to provide medical attention for the injuries he sustained during the

14  extraction. *See* Compl. at 4–6. While Plaintiff does not explain what prompted the incident,

15  on November 22, 2023, a cell extraction team comprised of Officers Flores, Enriquez,

16  Sanchez, Quintana, and Prieto approached his cell and ordered him to "cuff up." *See*

17  Compl. at 4. Plaintiff alleges he "informed the officers calmly that they did not need to

18  come in an beat [him] up," that he was "not resisting," and would "come out if [they]

19  open[ed] the door." *Id.* But "while [he] was standing [and] waiting for the door to fully

20  open[,] not moving[,] calm [and] in no way [posing] a threat," he claims that instead of

21  "giving [him] any order, Officer C. Flores immediately began to hit [him] with his shield."

22  *Id.* "Out of fear," Plaintiff alleges he "pushed back to prevent being pushed further in the

23  cell where there were no cameras." *Id.* Officer Enriquez then "swung his baton over …

24  Flores['] shield directly at [Plaintiff's] head." Plaintiff ducked, but Flores "pinned [him] to

25  the ground with his shield[,]" while Enriquez "immediately began beating [Plaintiff] with

26  his baton while [Plaintiff] lay on the floor in no way a threat or resisting." *Id.*

27          While on the floor, Plaintiff alleges he "found one of [the officer's] body cameras,"

28  and "pointed it back at Officer Enriquez while he beat[] him with [the] baton." *Id.* Enriquez

noticed, told Plaintiff to "drop my fucking camera," and "smash[ed] [Plaintiff's] hand with his baton." *Id.* While Flores "block[ed] the door holding the shield," Plaintiff "slid between his legs," but Flores "sat on [him] preventing [his] escape," while Enriquez "continued to beat [him] with his baton." *Id.* Plaintiff further claims Officers Flores, Sanchez, Quintana, Prieto, and Lt. John Doe all "failed to prevent [] Enriquez['s] continued attack." He alleges to have "begged" Sanchez, Flores, Quintana, Prieto, and Lt. Doe to "please cuff [him] up," but "they just laughed" until Lt. Doe "finally" ordered Enriquez to stop. *Id.* at 5.

After Enriquez "hit [Plaintiff] one more time," he claims to have been cuffed "dragged [him] out of the cell." *Id.* Plaintiff alleges he "told all officers present" that he "was in pain and had neck and other issues," but they "did not provide [him] any medical treatment," and instead picked him up while he lost consciousness. *Id.* Plaintiff "came to" while Enriquez and Flores carried him down the stairs, but he lost consciousness a second time before waking outside on the ground "in extreme pain." *Id.* Plaintiff alleges "medical" then came to clear him, but only for "purposes of fulfilling [] cell extraction requirements," and after Flores "twisted and turned [his] head causing extreme pain." *Id.*

"Within seconds," Plaintiff contends he was carried "superman style with 4 officers, one for each limb," and forced into a transportation van. *Id.* During the transfer, Plaintiff claims Enriquez "slam[med] his foot aggressively on the step [of the van] causing [Plaintiff] to bang [his] head on the step," and "smash[ed] [his] foot" while Plaintiff "tr[ied] to block the door to express [his] need[] [for] medical attention." "All officers" simply "sat and watched" while Enriquez "continued his attack." *Id.*[2]

---

[2] Once in the van, Plaintiff alleges to have also asked the transportation officers for medical help, to remove the handcuffs from behind his back, and to replace them with "transportation cuffs" and a waist chain, but he "got no response." *See* Compl. at 6. After arriving at "R&R," Plaintiff further claims an unidentified medical staff member "came to the van, but she too ignored his complaints of pain. *Id.* None of these officials is identified, however, and none is named as a Defendant.

*2.    Analysis*

Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For claims arising out of the use of excessive physical force, the Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted). Officers can also be held liable under the Eighth Amendment for failing to intercede in situations where excessive force is employed by other officers and they had the opportunity to stop it. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000)); *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)). Finally, a prison official's alleged "deliberate indifference to [an inmate's] serious medical needs" violates the Eighth Amendment. *Estelle*, 429 U.S. at 104. "Indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

Here, Plaintiff alleges Officers Enriquez, Flores, Prieto, Quintana and Sanchez, together with Lt. John Doe, all either used unnecessary force personally during his cell extraction, failed to intervene while other members of the team beat him, and ignored his pleas for medical attention during the November 22, 2023 extraction. The facts contained in his Complaint, when liberally construed in Plaintiff's favor, plausibly support Eighth Amendment violations. *See Iqbal,* 556 U.S. at 678; *Hudson*, 507 U.S. at 7. *See also Green v. Lizarraga,* No. 3:22-CV-01175-DMS-MDD, 2022 WL 6254949, at *1 (S.D. Cal. Oct. 6, 2022) (finding allegations against extraction officers who forcefully entered plaintiff's cell, "slammed a shield to [his] face," punched him after he fell, and applied a choke hold sufficient to survive initial screening pursuant to 28 U.S.C. § 1915A); *Bell v. Martel,* No. 2:17-CV-0063 CKD P, 2017 WL 1353739, at *2 (E.D. Cal. Apr. 12, 2017) (finding prisoner's allegations of having sustained a "bloody nose, two black eyes, ruptured veins in both eyes, bruises, back pain, and a skull fracture" as the result of have been punched in

the face during a cell extraction sufficient to survive initial screening per 28 U.S.C. § 1915A(b)); *cf. Williams v. Ryals*, No. 3:21-CV-00133 ART CSD, 2022 WL 18356164, at *6 (D. Nev. Sept. 13, 2022) (recommending denial of summary judgment in favor officer filming cell extraction because genuine dispute existed as to both reasonableness of force and whether the filming officer had a "reasonable opportunity to intervene"), *report and recommendation adopted,* 2022 WL 17820350 (D. Nev. Dec. 20, 2022); and *Hill v. Black*, No. 20-CV-05900-YGR (PR), 2021 WL 229285, at *2 (N.D. Cal. Jan. 22, 2021) (finding Eighth Amendment medical deliberate indifference claims related to injuries prisoner sustained during cell extraction sufficient to survive initial screening pursuant to 28 U.S.C. § 1915A(b)(1), (2)).

Thus, because the Court finds Plaintiff's Eighth Amendment allegations are "sufficient to warrant . . . an answer," *Wilhelm*, 680 F.3d at 1123, it will direct U.S. Marshal service upon the *named* Defendants (Enriquez, Flores, Prieto, Quintana, and Sanchez) on his behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

While the Court finds Plaintiff's Eighth Amendment allegations involving Lt. John Doe are also sufficiently pleaded to survive the "low threshold" set for initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), *see Wilhelm*, 680 F.3d at 1123, he must first identify this person, submit an amended pleading and/or file a motion to substitute Lt. John Doe's true name, *and* request U.S. Marshal service upon the Lieutenant as required by Federal Rule of Civil Procedure 4 before any claims alleged against the Lieutenant may proceed. *See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within [90] days of the commencement of the action against them); Fed. R. Civ. P. 15(c)(1)(C) & 4(m). Generally, Doe pleading is disfavored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and in most instances it is impossible for the United States Marshal to serve a party identified only as a Doe. *See*

*Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant."). However, where the identity of parties is not known prior to filing of an action, Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify unknown Does, unless it is clear that discovery would not uncover their identities, or his pleading requires dismissal for other reasons. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

## III.    CONCLUSION

Accordingly, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2.    **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $1.95 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Phillips' account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.    **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and forward it to him along with blank U.S. Marshal Form 285s for Defendants A. Enriquez, C. Flores, C. Prieto, A. Quintana, and J. Sanchez *only*. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve these named Defendants. Upon receipt of this "IFP

Package," Plaintiff must complete the Form 285s as completely and accurately as possible, *include an address where Defendants A. Enriquez, C. Flores, C. Prieto, A. Quintana, and J. Sanchez may be found and/or subject to service*, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

5.    **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants A. Enriquez, C. Flores, C. Prieto, A. Quintana, and J. Sanchez at the addresses provided by Plaintiff on the USM Form 285s provided, and to file executed waivers of personal service upon these named Defendants with the Clerk of Court as soon as possible after their return. Should Defendants A. Enriquez, C. Flores, C. Prieto, A. Quintana, or J. Sanchez fail to return the U.S. Marshal's requests for waiver of personal service within 90 days, the U.S. Marshal must instead file the completed Form USM 285 Process Receipt and Return(s) with the Clerk of Court, include the date the summons, Complaint, and request(s) for waiver were mailed to each Defendant, and indicate why service remains unexecuted. All costs of service will be advanced by the United States; however, if any Defendant located within the United States fails without good cause to sign and return the waivers requested by the Marshal on Plaintiff's behalf, the Court will impose upon that Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6.    **ORDERS** Defendants A. Enriquez, C. Flores, C. Prieto, A. Quintana, and J. Sanchez, once served, to reply to Plaintiff's Complaint, *and any subsequent pleading Plaintiff may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face of the pleading alone that Plaintiff has a "reasonable opportunity to prevail on

1  the merits," defendant is required to respond); and

2      7.      **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to

3  serve upon Defendants, or if appearance has been entered by counsel, upon Defendants'

4  counsel, a copy of every further pleading, motion, or other document submitted for the

5  Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every

6  original document he seeks to file with the Clerk of the Court, a certificate stating the

7  manner in which a true and correct copy of that document has been served on Defendants

8  or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2.

9      Any document received by the Court which has not been properly filed with the

10  Clerk, or which fails to include a Certificate of Service upon the Defendants or their

11  counsel, may be disregarded.

12      **IT IS SO ORDERED.**

13  Dated:  November 4, 2025

14

15  Honorable Linda Lopez
    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28